**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 25, 2012

Lyle W. Cayce
Clerk

No. 10-40192

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GREGORY POLYDORE,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CR-101

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

On September 15, 2004, Defendant Gregory Polydore pleaded guilty to conspiracy to defraud the United States (wire fraud), in violation of 18 U.S.C. § 371. Polydore was sentenced to 15 months imprisonment, a $3,000 fine, $75,643 in restitution and three years of supervised release. Polydore completed his term of imprisonment and began serving his term of supervised release on September 6, 2006.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40192

In June 2008, Polydore's supervised release was revoked and he was sentenced, inter alia, to one day of imprisonment and 30 months of supervised release, the first six months of which were to be served in home detention with electronic monitoring.

In January 2010, Polydore's supervised release was revoked a second time following his failure to adhere to certain conditions of the supervised release imposed following his first revocation. This second revocation is the subject of Polydore's instant appeal. At his second revocation hearing, Polydore was sentenced to six months imprisonment and 29 months of supervised release. On July 30, 2010, Polydore was released from prison, but his case is not moot because he is still serving his 29-month term of supervised release. *United States v. Larez-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006).

Polydore challenges the 29-month supervised release term imposed as part of his current revocation sentence, contending that the district court erred by failing to give him credit for the six-month term of home detention imposed as part of his first revocation sentence when calculating the maximum term of supervised release that may be imposed as part of his second revocation sentence. Under 18 U.S.C. § 3583(h), following the revocation of supervised release and the imposition of a term of imprisonment, a district court may require the defendant to serve an additional term of supervised release. 18 U.S.C. § 3583(h).[1] However, this additional term of supervised release may not exceed the maximum term of supervised release for the original offense less any

---

[1] 18 U.S.C. § 3583(h) provides:

Supervised release following revocation. – When a term of supervised released is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

2

No. 10-40192

term of imprisonment imposed on revocation. *Id.* A term of imprisonment that was imposed following a prior revocation also must be deducted from the maximum term of supervised release. *United States v. Vera*, 542 F.3d 457, 462 (5th Cir. 2008).

This court reviews *de novo* whether a defendant received a sentence in excess of the statutory maximum. *Vera*, 542 F.3d at 459; *United States v. Ferguson*, 369 F.3d 847, 849 (5th Cir. 2004) ("[W]e review de novo a sentence that allegedly exceeds the statutory maximum term"). A sentence that exceeds the statutory maximum is an illegal sentence and, we held in *Vera*, constituted plain error. 542 F.3d at 459.

In *Vera*, we held that "under 3583(h) the maximum allowable supervised release following multiple revocations must be reduced by the aggregate length of any terms of imprisonment that have been imposed upon revocation." *Id.* at 462 (internal quotation marks omitted). Thus, any terms of imprisonment imposed in Polydore's first and second revocation must be aggregated and subtracted from the maximum allowable term of supervised release.

Polydore's underlying offense carried a maximum statutory penalty of five years of imprisonment, which makes it a Class D felony. 18 U.S.C. § 371; 18 U.S.C. § 3559(a)(4). The maximum term of supervised release for a Class D felony is 36 months. *See* 18 U.S.C. § 3583(b)(2). Following the instant revocation, Polydore was sentenced to six months imprisonment and 29 months supervised release. He previously was sentenced to one day imprisonment following the June 2008 revocation of his supervised release. The government contends that the district court correctly applied the statute and our caselaw holding that only the sum of these two prior terms of imprisonment are subtracted from the 36-month maximum term of supervised release, leaving 29 months and 29 days as the maximum available term of supervised release.

3

No. 10-40192

Thus, the imposition of a 29-month term of supervised release following the instant revocation would not be erroneous. We agree.

The issue before us is whether the first six months, served on home detention, of the 30-month term of supervised release that Polydore was sentenced to at his June 2008 revocation judgment, must be considered a term of imprisonment for the purposes of § 3583(h). If we accept Polydore's argument that the six months of home detention is a term of imprisonment for the purposes of calculating the maximum authorized term of supervised release, then the previously imposed one day term of imprisonment *and* the six-month term of home detention would be added to the six-month term of imprisonment imposed at his second revocation and would all be deducted from the 36-month maximum term of supervised release, leaving a maximum available term of supervised release of only 23 months and 29 days.

In *United States v. Ferguson*, we held that, following the revocation of supervised release, a court may not impose a term of incarceration and a term of home detention during supervised release that, when added together, would exceed the allowable maximum term of incarceration. 369 F.3d at 851–52. Following the revocation of his supervised release, the district court sentenced Ferguson to 23 months of imprisonment and imposed a term of 13 months of supervised release, the first six months of which were to be served on home detention. *Id.* at 848–49. Ferguson argued that the combination of the 23-month terms of imprisonment plus the six-month term of home detention exceeded the applicable statutory maximum term of 24 months of imprisonment. *Id.* at 850. Citing § 3563(b)(19), we noted that home detention is a condition of supervised release that a court may impose only as an alternative to incarceration. *Id.* at 849–51; *see* 18 U.S.C. § 3563(b)(19).[2]

_____

[2] We note that two other circuits have indicated agreement with *Ferguson*. *See United States v. Marcano*, 525 F.3d 72, 73–74 (1st Cir. 2008) (citing *Ferguson* in support of its holding

4

No. 10-40192

Our court in *Ferguson*, however, did not address the precise question raised by the instant case: whether a previously imposed term of home detention is a term of imprisonment for purposes of determining the maximum term of supervised release that may be imposed following a subsequent revocation. *Ferguson* held that home detention may be credited against the maximum *term of imprisonment* that may be imposed following the revocation of supervised release. *Ferguson*, 369 F.3d at 849–52. We decline Polydore's invitation to expand *Ferguson* to hold that home detention is a term of imprisonment for the purposes of calculating the maximum *term of supervised release* that may be imposed upon revocation. Plain meaning analysis, the same analysis we used in *Ferguson*, requires this conclusion. *See id.* at 851–52.

The statutory language of § 3583(h) does not include home detention in the calculation for maximum supervisory release that may be imposed upon revocation. Instead, § 3583(h) imposes the following limits on supervised release: "The length of . . . supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any *term of imprisonment* that was

---

of no plain error because combined term of incarceration and home detention were less than statutory maximum); *United States v. Boecker*, 280 F.3d 824, 826 (8th Cir. 2002) (holding that the lower court "was entitled to sentence Boecker to up to 21 months in prison (not [the maximum] 24 month [under § 3583(e)(3)] because Boecker had spent 3 months in home detention)"). However, the Third and Fourth Circuits have indicated disagreement with Ferguson. *See United States v. Williams*, 387 F. App'x 282 (3d Cir. 2010) (unpublished) (noting circuit split and declining to find plain error based on *Ferguson* holding); *United States v. Hager*, 288 F.3d 136, 137–38 (4th Cir. 2002) (holding that, because home detention "is more properly viewed as a condition of supervised release" rather than a term of incarceration, home detention is not credited against the maximum term of imprisonment that may be imposed following the revocation of supervised release).

Polydore points out that the court in *Hager* did not attack the district court's consideration of Hager's six months of home detention as a term of imprisonment for the purposes of imposing a maximum term of supervised release under 18 U.S.C. § 3583(h) in his first revocation sentence. 288 F.3d at 138–39. However, the district court's treatment of § 3583(h) was not before the court in *Hager* and therefore the court was not required to reach that issue. *See id.* at 137.

No. 10-40192

imposed upon revocation of supervised release." 18 U.S.C. § 3583(h) (emphasis added).  "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *United States v. Smith*, 499 U.S. 160, 167 (1991) (internal quotation marks and citations omitted).  The language of § 3583(h) makes no mention of home detention as a factor in the equation to determine the maximum term of supervised release that may be imposed upon a defendant.  Moreover, Polydore has not argued that there is any contrary legislative intent. The Second Circuit has held that the language of § 3583(h) "plainly indicates that courts are only required to credit time spent in prison." *United States v. Pettus*, 303 F.3d 480, 484–85 (2d Cir. 2002) (holding that, for the purposes of § 3583(h), a defendant is not entitled to a credit against his reimposed term of supervised release for any time he previously spent on supervised release).

Polydore argues that any term of home detention imposed under 18 U.S.C. § 3583 is considered the equivalent of a term of imprisonment because 18 U.S.C. § 3583(e)(4) states that "an order under this paragraph [ordering home detention] may be imposed only as an alternative to incarceration" and § 18 U.S.C. § 3563(b)(19) likewise provides that home detention "may be imposed only as an alternative to incarceration."  Under these two statutes, home detention is a referred to as an alternative to incarceration and, thus, home detention and imprisonment share the same time limitation.[3] However, neither statute makes

---

[3] In *Ferguson*, we used a plain language analysis of the term "alternative" in § 3583(e)(4) and § 3563(b)(19) to conclude that a term of incarceration and subsequent home detention imposed upon revocation of supervised release cannot exceed the allowable maximum incarceration term. 369 F.3d at 851 (noting that, "Webster's Third New International Dictionary defines 'alternative' as 'a proposition or situation offering a choice between two things wherein if one thing is chosen the other is rejected.'").

No. 10-40192

the statement, nor should it be inferred, that home detention and incarceration are the same.[4]

Furthermore, though Congress made the decision to link home detention and incarceration in 18 U.S.C. § 3563(b)(19) and 18 U.S.C. § 3583(e)(4), Congress made the decision to omit home detention from the formula for post-revocation supervised release in § 3583(h). When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion. *See Pettus*, 303 F.3d at 485 (internal citations omitted).

Finally, Polydore's home detention would not be considered a term of incarceration for the purposes of § 3583(h) because the terms of Polydore's home detention were not as severe as or analogous to a term of incarceration.[5] Incarceration results in a total loss of liberty. The terms of Polydore's home

---

[4] Notably in *Hager*, the Fourth Circuit held that home detention is not credited against the maximum term of imprisonment that may be imposed following the revocation of supervised release. Defendant Hager unsuccessfully made an argument very similar to the one Polydore attempts to make here. Hager argued that because 18 U.S.C. § 3583(e)(4) states that home detention may be imposed only as an alternative to imprisonment, home detention is equivalent to prison. *Hager*, 288 F.3d at 137. The court disagreed and observed, "Congress' choice of the word 'alternative' does not indicate that home confinement and incarceration are equivalents under the statute . . . . The word alternative simply does not imply that two things are the same or equivalent." *Id.* at 137–38.

[5] The terms of Polydore's home detention were as follows:
The defendant shall be placed on home detention for a period not to exceed six (6) months, to commence immediately upon the commencement of supervised release. During this time, the defendant shall remain at his place of residence except for medical reasons, two hours per week to attend church, and appointments with the U.S. Probation Officer. The defendant shall maintain a telephone at his place of residence without "call forwarding," "a modem", "Caller I.D.", "call waiting", or portable cordless telephone for the above period. At the direction of the probation officer, the defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer. The defendant is to pay the cost associated with his program of electronic monitoring.

No. 10-40192

detention allowed him to be at home, albeit with restrictions and confines, yet still enjoying the comforts of that goodly home with access to family and friends. Polydore was allowed to leave his home for church, visits to the doctor, and appointments with his probation officer. Polydore's home detention was not a term of incarceration.

For the reasons stated above, defendant Polydore's sentence is AFFIRMED.

10-40192

OWEN, Circuit Judge, concurring.

I fully join the panel's opinion. I write separately to address the phrase in 18 U.S.C. § 3583(e)(4) that provides: "except that an order under this paragraph [permitting imposition of home detention] may be imposed only as an alternative to incarceration" and to consider in more detail the argument that under the provision in § 3583(h) requiring credit for "any term of imprisonment that was imposed upon revocation of supervised release," the maximum term of supervised release must be reduced by time spent subject to home detention.

I also write separately to consider the tension between our decision today and a prior decision of our court, *United States v. Ferguson*,[1] construing the "only as an alternative to incarceration" phrase. We held in *Ferguson* that because of that phrase, courts are required to credit time spent subject to home detention against the statutory maximum term of *imprisonment* that may be imposed upon revocation of supervised release.[2] Although the holding in *Ferguson* does not control the present case, its logic supports the conclusion that home detention should be treated the same way in determining the maximum length of a term of supervised release that a sentencing court may impose after revocation of supervised release. I respectfully submit that *Ferguson*'s construction of the "only as an alternative to incarceration" language in 18 U.S.C. § 3583(e)(4) is plausible when that phrase is considered in isolation.[3] But when considered in

---

[1] 369 F.3d 847 (5th Cir. 2004).

[2] *Id.* at 851 ("[T]he plain meaning of 'alternative' leads to the conclusion that a court could not impose both a term of incarceration (upon revocation of supervised release) and subsequent home detention during a reimposed term of supervised release that, when combined, exceeds the allowable maximum incarceration term.").

[3] *See generally Reno v. Koray*, 515 U.S. 50, 56 (1995) (examining the argument that the phrase "official detention" in 18 U.S.C. § 3585(b) includes confinement in a community treatment center while released on bail and observing that "[v]iewing the phrase in isolation, it may be said that [such a] reading is plausible"); *see also id.* at 62 ("This contention is a plausible one if the phrase is read in isolation: respondent was subjected to restrictive conditions when released on bail, these conditions were imposed by a court order, and his

10-40192

context and in conjunction with other statutes enacted at the same time,[4] our decision in *Ferguson* appears to have misconstrued §§ 3583(e)(4) and 3583(h).

## I

Polydore was convicted of a Class D felony and sentenced to imprisonment and a term of supervised release after imprisonment. The question before us concerns the options a court has under 18 U.S.C. § 3583(e) when it decides to modify or revoke supervised release. Specifically, the question is how time served subject to home detention, as described in § 3583(e)(4), should be treated in calculating the maximum term of supervised release that may be imposed after revocation of supervised release.

Polydore was originally sentenced to fifteen months of imprisonment to be followed by three years of supervised release. The maximum term of supervised release that the original sentencing court could impose for such a conviction was thirty-six months.[5] Polydore served his initial prison sentence and began serving his initial term of supervised release. He violated the terms of supervised release, and supervised release was revoked. Upon revocation, Polydore was sentenced to serve one day in prison to be followed by twenty-nine months of supervised release. The twenty-nine months of supervised release

---

sojourn in the community treatment center therefore amounted to 'official detention.'").

[4] *See generally id.* at 56 ("[I]t is a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'" (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993))); *id.* (noting that the Bail Reform Act of 1984 was enacted in the same statute as the Sentencing Reform Act of 1984 and that "'[i]t is not uncommon to refer to other, related legislative enactments when interpreting specialized statutory terms,' since Congress is presumed to have 'legislated with reference to' those terms" (quoting *Gozlon-Peretz v. United States*, 498 U.S. 395, 407-408 (1991))).

[5] 18 U.S.C. § 3583(b)(2) ("Except as otherwise provided, the authorized terms of supervised release are . . . for a Class C or D felony, not more than three years . . . .").

included six months of home detention, as defined in § 3583(e)(4).[6] During this period of supervised release, after Polydore had spent six months in home detention, his supervised release was again revoked. The district court then sentenced Polydore to six months of imprisonment to be followed by twenty-nine months of supervised release. Polydore contends that the maximum time that the district court could sentence him to post-revocation supervised release for this violation of supervised release was twenty-four months. Polydore arrives at this calculation by insisting that he receive credit for the six months that he was subject to home detention. Polydore argues that these six months are to be added to the six-month term of imprisonment that he served and then that total of twelve months must be subtracted from the maximum term of supervised release, thirty-six months, that could have been imposed. He argues that under § 3583(e)(4), home detention is considered the equivalent of a term of imprisonment and that under § 3583(h), the district court was required to aggregate all the prison terms imposed for the prior revocations of supervised release and subtract that total from the thirty-six-month term of supervised release authorized for the Class D offense that resulted in the original term of supervised release.

Polydore's position fails for at least two reasons. First, time spent subject to home detention is not a "term of imprisonment" within the meaning of §§ 3583(h) and 3583(a). Second, the phrase "only as an alternative to incarceration" was added to § 3583(e)(4) at the same time it was added to other statutes, and it is clear from the phrase's use in the other statutes that home

---

[6] *Id.* § 3583(e)(4) (providing that upon modification or revocation of supervised release, a court may "order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic devices, except that an order under this paragraph may be imposed only as an alternative to incarceration").

10-40192

detention was not intended by Congress to be the equivalent of a term of imprisonment.

## II

In subsection 3583(e), Congress has provided several alternatives when a court chooses to modify or revoke supervised release.[7] The first alternative, set

---

[7] *Id.* § 3583(e), which provides:

(e) MODIFICATION OF CONDITIONS OR REVOCATION.—The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—

(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or

(4) order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an

forth in the first paragraph of § 3583(e), is that a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . ."[8] The second alternative is set forth in the second paragraph of § 3583(e). Under that alternative, a court may "extend a term of supervised release if less than the maximum authorized term was previously imposed . . . ."[9] A court may also "modify, reduce, or enlarge the conditions of supervised release" under this alternative.[10]

We are today concerned with the third and fourth paragraphs of § 3583(e). Under the third paragraph, a court may "revoke a term of supervised release, and require the defendant *to serve in prison* all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision . . . ."[11] The fourth paragraph of § 3583(e) provides that a court may "order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, *except that an order under this paragraph may be imposed only as an alternative to incarceration.*"[12]

Polydore's argument seems to be that home detention is *not an alternative to modifying or extending supervised release.* Under this construction, home detention is an alternative *only to incarceration.* This would mean that under

order under this paragraph may be imposed only as an alternative to incarceration.

[8] *Id.* § 3583(e)(1).

[9] *Id.* § 3583(e)(2).

[10] *Id.*

[11] *Id.* § 3583(e)(3) (emphasis added).

[12] *Id.* § 3583(e)(4) (emphasis added).

subsection (3), when a court is given the authority to "revoke a term of supervised release, and require the defendant to serve *in prison* all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision,"[13] a court can order a defendant to serve *in home detention rather than in prison* all or part of the maximum amount of time of supervised release authorized by statute for the offense. Time subject to home detention would not be part of supervised release but would instead be the locale of the term of imprisonment, as an alternative to incarceration in a Bureau of Prisons (BOP) facility.

A corollary argument that supports Polydore's position is that because home detention is to be treated only as an alternative to "incarceration" under subsection (4) of § 3583(e) and because, Polydore argues, the time that would otherwise be spent "in prison" under subsection (3) of § 3583(e) can be spent in home detention by virtue of subsection (4), home detention is to be treated as a "term of imprisonment" within the meaning of the crediting provision in § 3583(h).[14] This construction is problematic for several reasons.

One is that § 3583(d) also authorizes a court to impose any condition upon supervised release that it may impose as a condition to probation under § 3563(b). A court has the same authority to impose the conditions set forth in

---

[13] *Id.* § 3583(e)(3) (emphasis added).

[14] *Id.* § 3583(h), which provides:

(h) SUPERVISED RELEASE FOLLOWING REVOCATION.—When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

§ 3563(b) when it revokes supervised release and orders a term of imprisonment that is to be followed by another term of supervised release.[15]  Accordingly, § 3583(d), by referencing § 3563(b)(10), permits a court to require a defendant, as a condition of supervised release, to "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation . . . ."[16]  However, there is no proviso like the one in the home detention subsection that provides that time spent in the custody of the BOP during nights and weekends or other intervals of time "may be imposed only as an alternative to incarceration."[17]  If Congress intended for time spent in home detention to be considered the same as time spent serving a term of imprisonment following revocation of supervised release, it is exceedingly odd that Congress failed to provide a crediting mechanism for time spent in the custody of the BOP as a condition of supervised release.

The existence of provisions in the probation and supervised release statutes that permit a court to require intermittent incarceration in BOP custody as a condition of probation or supervised release do, however, serve as an explanation for the inclusion of the "only as an alternative to incarceration" provisos applicable to home detention.  Congress recognized that someone who spends night, weekends or other intervals of time in the custody of the BOP as a condition of probation or supervised release is actually incarcerated for those periods of time, though not serving a "term of imprisonment."  The "only as an alternative to incarceration" exception can reasonably be construed to mean that home detention should only be used as an alternative to intermittent

---

[15]  *See Johnson v. United States*, 529 U.S. 694, 708 (2000).

[16]  18 U.S.C. § 3563(b)(10); *id.* § 3583(d).

[17]  *Id.* § 3583(e)(4).

incarceration while in the custody of the BOP, which is authorized as a condition of probation in § 3563(b)(10) and as a condition of supervised release in § 3583(d) through its reference to § 3563(b)(10).[18]  The "only as an alternative to incarceration" phrase also emphasizes to a sentencing judge that home confinement is very a restrictive condition.

Another reason that Polydore's construction of §§ 3583(e)(4) and 3583(h) is problematic is that the phrase "term of imprisonment" generally has a specific meaning as used in the statutes that govern sentencing.[19]  Congress has defined when and how a term of imprisonment commences to run.  "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."[20] A defendant sentenced to a term of imprisonment is "committed to the custody of the Bureau of Prisons . . . ."[21]  A defendant who is subject to home detention is not in the custody of the BOP.

The Supreme Court explained in *Reno v. Koray* that Congress has drawn a distinction between being in the custody of the BOP in "'official detention'" and being released from the custody of the BOP while on probation or supervised

---

[18] *But see United States v. Ferguson*, 369 F.3d 847, 851 (5th Cir. 2004) (rejecting the Government's argument that "alternative to incarceration" proviso in the home detention provisions "refers to intermittent detention and community correction facilities").

[19] *But see Barber v. Thomas*, 130 S. Ct. 2499, 2506 (2010) (recognizing that the presumption that a given term is to mean the same thing throughout a statute "is not absolute" and "yields readily to indications that the same phrase used in different parts of the same statute means different things, particularly where the phrase is one that speakers can easily use in different ways without risk of confusion" and concluding that "[t]he phrase 'term of imprisonment' is just such a phrase" as used in 18 U.S.C. § 3624, which pertains to the calculation of good time credits (citations omitted)).

[20] 18 U.S.C. § 3585(a).

[21] *Id.* § 3621(a).

release.[22]  The issue in *Koray* was whether a defendant was entitled to credit for time spent confined to a community treatment center while he was released on bail after he pleaded guilty but before he was sentenced.[23]  The Court construed § 3585(b), which governs credit given for time spent in "official detention prior to the date the sentence commences,"[24] and held that "official detention" as used in that section does not include time spent in a treatment center while released on bail.[25]  Although the Supreme Court was not presented with the issue that we must decide today, the Court did reason that "[i]t would be anomalous to interpret § 3585(b) to require sentence credit for time spent confined in a community treatment center where the defendant is not subject to BOP's control, since Congress generally views such a restriction on liberty as part of a sentence of 'probation,' or 'supervised release,' see § 3583(d), rather than part of a sentence of 'imprisonment.'"[26]

The defendant in *Koray* argued that a prisoner still serving a prison sentence in the custody of the BOP could be directed to spend part of a term of imprisonment in a community treatment center and therefore that "it [was] improper to focus on the release/detention dichotomy."[27]  The Supreme Court rejected this argument, recognizing that although "a defendant 'released' to a community treatment center could be subject to restraints which do not materially differ from those imposed on a 'detained' defendant committed to the custody of the Attorney General" and then assigned to a treatment center, the

---

[22]  515 U.S. 50, 59 (1995).

[23]  *Id.* at 53-54.

[24]  18 U.S.C. § 3585(b).

[25]  *Koray*, 515 U.S. at 52.

[26]  *Id.* at 59 (citations omitted).

[27]  *Id.* at 62.

identity of the custodian was "an important distinction."[28]  The Court reasoned that "[a] defendant who is 'released' is not in BOP's custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release . . . or modifies the conditions of his release."[29]

The Supreme Court's opinion in *Koray* reflects that the Third Circuit Court of Appeals had attempted to equalize treatment of defendants confined by some branch of government in a community treatment center,[30] and the Third Circuit had held that "'official detention' for purposes of credit under 18 U.S.C. § 3585 includes time spent under conditions of jail-type confinement."[31]  The Supreme Court rejected the Third Circuit's "jail-type confinement" test.[32]  The Court observed that while "[i]t may seem unwise policy to treat defendants differently for purposes of sentence credit under § 3585(b) when they are similarly situated in fact,"[33] the Third Circuit's attempt to equalize treatment of "detained" inmates and "released" defendants had "its own grave difficulties."[34]

---

[28] *Id.* at 62-63; *see also id.* at 63 ( "Unlike defendants 'released' on bail, defendants who are 'detained' or 'sentenced' *always remain subject to the control of the Bureau*." (emphasis in original) (citing *Randall v. Whelan*, 738 F.2d 522, 525 (4th Cir. 1991))).

[29] *Id.* at 63.

[30] *Reno v. Koray*, 515 U.S. 50, 53 (1995).

[31] *Koray v. Sizer*, 21 F.3d 558, 567 (3d Cir. 1994), *rev'd*, 515 U.S. 50 (1995).

[32] *Koray*, 515 U.S. at 64.

[33] *Id.*

[34] *Id.* ("It may seem unwise policy to treat defendants differently for purposes of sentence credit under § 3585(b) when they are similarly situated in fact—the one is confined to a community treatment center after having been 'detained' and committed to the Bureau's custody, while the other is 'released' to such a center on bail.  But the alternative construction adopted by the Court of Appeals in this case has its own grave difficulties.  To determine in each case whether a defendant 'released' on bail was subjected to 'jail-type confinement' would require a fact-intensive inquiry into the circumstances of confinement, an inquiry based on information in the hands of private entities not available to the Bureau as a matter of right. Even were such information more readily available, it seems certain that the phrase 'jail-type

10-40192

The Court instead accepted the Government's construction of what constituted "detention," concluding that this interpretation provided "clear notice of the consequences of a § 3412 'release' or 'detention' order."[35]

Although confinement in a community center was at issue in *Koray*, and the statute under scrutiny was § 3585, the rationale of *Koray* applies with equal force to home detention as a condition of supervised release under § 3583. A defendant subject to home detention as a condition of supervised release is not in the custody of the BOP. A defendant subject to home detention cannot be summarily ordered to a different place or manner of confinement by the BOP. Only a court may revoke or modify the home detention condition.[36] Home detention is not the equivalent of official detention by the BOP[37] or a "term of imprisonment."

Polydore's contention that home confinement should be treated as a "term of imprisonment" for purposes of the crediting provision in § 3583(h) must be rejected.

### III

The history of the phrase "only as an alternative to incarceration" provides another strong indication that Congress did not intend for time spent subject to

confinement' would remain sufficiently vague and amorphous so that much the same kind of disparity in treatment for similarly situated defendants would arise. The Government's construction of § 3585(b), on the other hand, provides both it and the defendant with clear notice of the consequences of a § 3142 'release' or 'detention' order.").

[35] *Id.*

[36] *See* 18 U.S.C. § 3583(e).

[37] *See United States v. Zackular*, 945 F.2d 423, 425 (1st Cir. 1991) (construing § 3585 and holding that "[w]e do not believe that the 'official detention' requirement of section 3585 can be fulfilled by home confinement. While a defendant's movement may be severely curtailed by the conditions of his home confinement, it cannot seriously be doubted that confinement to the comfort of one's own home is not the functional equivalent of incarceration in either a practical or a psychological sense.").

home detention to be treated the same as time spent serving a term of imprisonment.  The Anti-Drug Abuse Act of 1988 added virtually identical home detention provisions to the then-existing probation, parole, and supervised release statutes.[38]  Each of the home detention provisions added in 1988 contained the phrase "except that a condition under this paragraph may be imposed only as an alternative to incarceration."[39]  The title of the section of the Anti-Drug Abuse Act that added the home detention provisions was "HOUSE PROBATION AS A CONDITION FOR PROBATION, PAROLE, OR SUPERVISED RELEASE."[40]  While the title of the section is certainly not dispositive, the description of the home detention provisions as "house *probation*" is consistent with the fact that a term of imprisonment was entirely distinct from probation, parole, and supervised release.

In 1988, when the "only as an alternative to incarceration" phrase was added, the probation statutes expressly prohibited a court from imposing a term of probation if the court sentenced the defendant to "a term of imprisonment" at the same time.[41]  That prohibition has remained unchanged.[42]  If home detention were the same as "a term of imprisonment," a sentence of probation including home detention as an element or condition would violate § 3561(a)(3).  But Congress, since 1988, has expressly permitted a court to include home detention as a "condition[] of a sentence of probation."[43]  The "except that a condition under

---

[38]  Pub. L. No. 100-690, § 7305, 102 Stat. 4181, 4465-66 (1988).

[39]  *Id.*

[40]  *Id.* at 4465.

[41]  18 U.S.C. § 3561(a)(3) (1988) (current version at 18 U.S.C. § 3561(a)(3) (2006)).

[42]  18 U.S.C. § 3561(a)(3) ("A defendant who has been found guilty of an offense may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.").

[43]  *Id.* § 3563(b)(19).

this paragraph may be imposed only as an alternative to incarceration" proviso in the home detention provision could not convert home detention as a condition of probation into a term of imprisonment without conflicting with an express prohibition regarding probation.

Similarly, 18 U.S.C. § 4209(c)(2) governs parole. The Supreme Court has described parole as a pre-Guidelines "nondetentive monitoring" option, closely "analogous to supervised release."[44] The Court explained that "parole . . . by definition was a release under supervision of a parole officer following service of some term of incarceration." Here again, Congress authorized home detention as a permissible condition of parole. The proviso "except that a condition under this paragraph may be imposed only as an alternative to incarceration" did not convert this condition of parole into a term of imprisonment.

We should generally presume that when Congress uses the same phrase more than once within an enactment or a section of an enactment, the phrase has the same meaning throughout the provision.[45] It would be unreasonable to conclude that in adding home detention provisions to the probation and parole statutes, Congress intended the home detention provisions it simultaneously added to the supervised release statutes to mean something different. There is no basis for concluding that by including the "only as an alternative to incarceration" language in the provisions governing supervised release that Congress intended home detention to be the equivalent of a term of imprisonment rather than a condition of supervised release.

**IV**

---

[44] *Johnson v. United States*, 529 U.S. 694, 710-11 (2000).

[45] *See Barber v. Thomas*, 130 S. Ct. 2499, 2506 (2010) ("[W]e have recognized a 'presumption that a given term is used to mean the same thing throughout a statute.'") (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

10-40192

The phrase "except that an order under this paragraph may be imposed only as an alternative to incarceration" was the principal basis for this court's holding in *United States v. Ferguson*.[46] We held in that case that in calculating the maximum time a defendant may be imprisoned following revocation of supervised release, home detention must be counted as time incarcerated.[47]

The decision in *Ferguson* reasoned that a "court's power to order home detention as a condition of supervised release stems from § 3583(d), which in turn refers to § 3563(b)(19)."[48] The opinion in *Ferguson* observed that under § 3583(d), in imposing conditions of supervised release as part of a sentence, a court may impose "any condition set forth as a discretionary condition of probation in section 3563(b)."[49] The court reviewed the list of conditions enumerated in § 3563(b) that may be imposed, including that a defendant "reside at . . . a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of probation,"[50] "work in community service as directed by the court"[51] or that a defendant "reside in a specified place or area, or refrain from residing in a specified place or area."[52] None of these conditions, however, has the "alternative to incarceration" proviso, and we found that to be compelling. After

---

[46] 369 F.3d 847 (5th Cir. 2004) (per curiam).

[47] *Id.* at 850-51; *see also United States v. Boecker*, 280 F.3d 824, 826 (8th Cir. 2002) (holding that upon revocation of supervised release following imprisonment for a Class C felony, "the court was entitled to sentence Boecker to up to 21 months in prison (not 24 months [the statutory maximum] because Boecker had spent 3 months in home detention) . . . .").

[48] *Ferguson*, 396 F.3d at 851.

[49] 18 U.S.C. § 3583(d).

[50] *Id.* § 3563(b)(11).

[51] *Id.* § 3563(b)(12).

[52] *Id.* § 3563(b)(13).

22

examining the almost identical home detention provisos in § 3563(b)(19) and § 3583(b)(4), we concluded that "unlike other discretionary conditions, home detention is unique."[53] We considered "the language and interplay of § 3583 and § 3563" and held that "[t]he statutory framework governing revocation and punishment for violating a condition of supervised release—§ 3583(e)—alone implies that incarceration and home detention are alternative punishments that may not combine in excess of the maximum statutory term of incarceration."[54] We observed in *Ferguson* that an option open to a sentencing court that revokes supervised release is to "order an incarceration term less than the maximum allowable term and reimpose a term of supervised release under § 3583(h)."[55] We made clear that even if a court imposes a "partial sentence of incarceration," a partial sentence of incarceration combined with a period of home detention could not exceed the maximum term of incarceration.[56]

For the reasons discussed earlier regarding the meaning of the phrase "term of imprisonment" and because of the history of the "only as an alternative to incarceration" phrase, I am compelled to conclude that our reasoning in *Ferguson* was flawed, and we should not extend the logic of *Ferguson* to the present case.

---

[53] *United States v. Ferguson*, 369 F.3d 847, 851 (5th Cir. 2004).

[54] *Id.* at 850.

[55] *Id.* at 850-51.

[56] *Id.* at 851 ("Sections 3583(e)(3) and (e)(4) make clear that incarceration and home detention are mutually exclusive when a court imposes the maximum sentence of incarceration; a court could not impose the maximum term of incarceration under subsection (e)(3) and also impose a period of home detention under (e)(4). The government does not explain why the same limitation would not hold true when a court imposes a partial sentence of incarceration.").

10-40192

Our decision in *Ferguson* conflicts with a decision of the Fourth Circuit Court of Appeals.[57] That court held that time served in home detention is not subtracted from the statutory maximum term of imprisonment imposed for revocation of supervised release.[58]

Differing views have been expressed by courts in other jurisdictions as to how or whether home detention or community confinement should be considered in determining if a sentence exceeded a federal statutory maximum duration of a sentence, or if a sentence was outside federal Guideline provisions[59] that are similar, but not identical, to or as extensive as federal statutes regarding home detention. I cite these decisions only in the margin[60] and will not lengthen this

---

[57] *See United States v. Hager*, 288 F.3d 136 (4th Cir. 2002).

[58] *Id.* at 137-39.

[59] U.S.S.G. §§ 5B1.3(e)(2) ("Home detention may be imposed as a condition of probation but only as a substitute for imprisonment."); 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment.").

[60] *United States v. Marcano*, 525 F.3d 72, 73-74 (1st Cir. 2008) (per curiam) (holding it was not plain error for the district court to impose home confinement as a condition of supervised release pursuant to § 3563(b)(19) , but noting that while in this instance, the period of incarceration and home confinement combined did not exceed the maximum incarceration term, the defendant "made a colorable argument that the district court could not have imposed a period of incarceration and supervised release involving home confinement in excess of . . . the statutory maximum"); *United States v. Kravchuk*, 335 F.3d 1147, 1159-60 (10th Cir. 2003) (holding that under U.S.S.G. § 5D1.3(e)(2) "home confinement is only to be substituted for imprisonment" and thus, the district court erred in failing to provide reasons for increasing his sentence beyond the guideline maximum in requiring home confinement after defendant had already served the maximum term of imprisonment); *United States v. Boecker*, 280 F.3d 824, 826 (8th Cir. 2002) (holding that upon revocation of supervised release following imprisonment for a Class C felony, "the court was entitled to sentence Boecker to up to 21 months in prison (not 24 months [the statutory maximum] because Boecker had spent 3 months in home detention), and up to 33 months of supervised released [sic], minus the prison time imposed, under the terms of § 3583(e)(3) and (h)," without making clear whether "prison time" included home detention in calculating supervised release); *United States v. Thomas*, 135 F.3d 873, 875 (2d Cir. 1998) (holding that supervised release "presupposes a period of imprisonment" and that home detention cannot be deemed "imprisonment" within the meaning of sentencing guidelines for the purpose of imposing supervised release); *United States v. Leaphart*, 98 F.3d 41, 43 (2d Cir. 1996) (holding that having made the decision to sentence the defendant to the maximum possible term of imprisonment under U.S.S.G.

opinion with detailed consideration of each. I do note that in construing the statutory provisions before us, the construction of the Guidelines is not precedent.[61]

## V

Although we concluded in *Ferguson* that our construction of § 3583 was based on its "plain language,"[62] we also observed that even if the Government's "interpretation of § 3583 were as rational as [the defendant's] interpretation, we may 'choose the harsher result . . . only when the legislature has spoken in clear and definite language.'"[63] We therefore held, as an alternate ground for the decision, that "[t]he language at issue here does not clearly and definitely provide that a court may combine the term of incarceration and home detention in excess of the maximum term allowed by § 3583(e)(3). Accordingly, we may not choose the harsher result."[64]

Regardless of whether *Ferguson* correctly applied the rule of lenity, that rule does not apply in the case before us today. Although the "only as an alternative to incarceration" proviso may be difficult to construe and apply, it does not render either § 3583(e) or § 3583(h) ambiguous.

---

§ 5B1.4(b)(20) the magistrate judge could not also sentence him to a period of home confinement); *United States v. Adler*, 52 F.3d 20, 21 (2d Cir. 1995) (per curiam) (deciding that under U.S.S.G. §§ 5C2.1(d) and (e) community confinement could not be substituted for imprisonment).

[61] *See United States v. Turner*, 305 F.3d 349, 350 (5th Cir. 2002); *United States v. Guerra*, 962 F.2d 484, 487 (5th Cir. 1992).

[62] *United States v. Ferguson*, 369 F.3d 847, 851 (5th Cir. 2004) ("[T]he plain meaning of 'alternative' leads us to the conclusion that a court could not impose both a term of incarceration (upon revocation of supervised release) and subsequent home detention during a reimposed term of supervised release that, when combined, exceeds the allowable maximum incarceration term.").

[63] *Id.* at 851-52.

[64] *Id.* at 852.

The Supreme Court has admonished that the rule of lenity should not be invoked simply because a statute is not "crystalline."[65]  The rule of lenity "is reserved for cases where, 'after seizing everything from which aid can be derived, the Court is left with an ambiguous statute.'"[66]  A recent Supreme Court decision is instructive.  In *Barber v. Thomas*, the Court was called upon to construe a statute governing good time credit for federal inmates, 18 U.S.C. § 3624(b).[67]  Subsection (b)(1) of that statute used the phrase "term of imprisonment" at least three times.[68]  The defendants argued that good time credits must be calculated "based upon the length of the term of imprisonment that the sentencing judge imposes, not the length of time that the prisoner actually serves."[69]  The BOP construed the statute based upon time actually served, and the defendants argued that this caused them to lose seven days of good time credit per year of imprisonment.[70]  Before this case reached the Supreme Court, a number of courts of appeals had struggled with the crediting provisions in § 3624.  The Tenth Circuit concluded that the statute was ambiguous, citing decisions from other circuits that had reached the same conclusion.[71]  This court also struggled

---

[65] *DePierre v. United States*, 131 S. Ct. 2225, 2237 (2011).

[66] *Id.* (quoting *Smith v. United States*, 508 U.S. 223, 239 (1993)).

[67] 130 S. Ct. 2499, 2502 (2010).

[68] *See id.* (quoting 18 U.S.C. § 3624(b)(1)) ("'[A] prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term. . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.'").

[69] *Id.* at 2503.

[70] *Id.*

[71] *Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1235-36 (10th Cir. 2006) ("As for the issue at hand, we hold, in accordance with nearly every circuit court to consider the issue, that 'term of imprisonment' is ambiguous as it is susceptible to more than one interpretation.

with interpreting § 3624, although we ultimately concluded that the phrase "term of imprisonment" meant different things when read in context and that the statute was unambiguous.[72]

Although numerous circuit courts had found § 3624 to be ambiguous, the Supreme Court held that there was no "grievous ambiguity" and that the rule of lenity did not apply.[73] The Court explained that "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute' . . . such that the Court must simply 'guess as to what Congress intended.'"[74]

After considering the structure, history, and purposes of the statutes regarding supervised release, and the related structure, history and purposes of statutes regarding probation, we are not left simply to guess what Congress intended regarding home detention. Whatever else Congress may have intended by adding the proviso "only as an alternative to incarceration," there is no grievous ambiguity regarding the separate treatment of a term of imprisonment and conditions placed on a term of supervised release.

\* \* \* \* \*

I concur and join the opinion of the panel.

---

*See Bernitt v. Martinez*, 432 F.3d 868, 869 (8th Cir. 2005); *Sash*, 428 F.3d at 136; *Petty v. Stine*, 424 F.3d 509, 510 (6th Cir. 2005); *Brown v. McFadden*, 416 F.3d 1271, 1272-73 (11th Cir. 2005); *Yi*, 412 F.3d at 533; *O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005); *Perez-Olivo*, 394 F.3d at 52; *White*, 390 F.3d at 1002-03; *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1269-70 (9th Cir. 2001); *but see Moreland v. Fed. Bureau of Prisons*, 431 F.3d 180, 186 (5th Cir. 2005) (holding that § 3624(b)(1) unambiguously directs good time credits to be calculated at the end of each year of time served).").

[72] *Moreland v. Fed. Bureau of Prisons*, 431 F.3d 180, 186, 189 (5th Cir. 2005).

[73] *Barber*, 130 S. Ct. at 2509.

[74] *Id.* at 2508-2509.